Thank you, Your Honor. Good morning to the court, if it pleases the court. Jerome Wallingford representing Ronald Reeve, who is the petitioner on this matter. Mr. Reeve contends that the Miranda waiver and confession that he gave on September 11, 1999 in the Utah jail should have been suppressed due to the actions of law enforcement officers who held him incommunicado in that facility waiting for California authorities to arrive the next day. In this type of an issue, it almost always pits the testimony of the accused against the testimony of law enforcement officers, which can be kind of an unfair match in that there is a tendency to believe the law enforcement officers and not believe the inmate. The U.S. Supreme Court has addressed this kind of an issue in Haynes v. Washington and provided guidelines on how a court should proceed when it is dealing with this kind of a situation. Mr. Reeve, I would like to ask you a question. Mr. Reeve Well, counsel, please help me if you can. This is a NEDPA case. Mr. Wallingford Correct. Mr. Reeve Under 2254 D2, the issue is whether there are any factual findings which are unreasonable. Mr. Wallingford Correct, Your Honor. So how we should weigh policeman testimony as against non-policeman testimony is something that really doesn't – it's not incumbent upon us. It's incumbent upon the trial court in the state where the conviction occurred. And we should review it only under 2254 D2, which is for reasonability, right? Mr. Reeve I agree with that, Your Honor. And that's really my next point, is that in Haynes, the U.S. Supreme Court used a test that basically avoids that problem because in that case the U.S. Supreme Court looked to uncontroverted facts to decide what the truth was. And this trial court did not do that. This trial court just did a straight weighing and actually ignored some very important facts that were either uncontroverted or even uncontrovertible. Mr. Wallingford Tell me what the trial court did wrong. Mr. Reeve What the trial court did wrong, and also the California Court of Appeal did wrong, was they ignored things like the fact that – well, here's the uncontroverted facts, which I think are very significant and which I will – I'd like to just go through them very quickly and then explain how those actually destroy some of the factual findings that were made by the California courts. First, Mr. Reeve was held for several hours, probably over three hours in the booking area, even though booking would only take 30 to 45 minutes. We know that the phones were turned off for 22 hours, and we know that because after the defense got the telephone records and showed them to the jailers, the jailers never contested that afterwards. Mr. Wallingford I don't think – it's not contested that he wasn't allowed to make a phone call in the 22 hours after he was arrested. That's correct. That's an uncontroverted fact, and it is also uncontroverted that Barnett took the stand. Barnett was the jailer who was in the jail at the time Mr. Reeve was admitted into the jail, and he not only admitted the phones were turned off because of the Reeve investigation. I mean, that's why they were turned off. He also said something very important in his testimony, and that is that if Mr. Reeve had asked to use the phones, he would not have been allowed to use them. Counsel, Counsel, Judge Gould with a question for you. I understand what's undisputed, but still it's also undisputed that the California detectives, when they finally arrived, gave him his Miranda rights, and the statements you're challenging, if I understand it, were made after they read him his rights, and he didn't ask for a lawyer then. So in light of that, you know, why would we say his will was overborne by what happened before the California cops got there? Part of my argument is, Your Honor, that the Miranda waiver itself was involuntary. In other words, the actions of those officers in the Utah jail for almost a full day overbore Mr. Reeve's will. So by the time he got into that interrogation, at that point he had already given up on the hope of getting counsel. But hadn't he been in a situation like that before where he exercised his Miranda rights? And, I mean, the theory of his claim here is that it was just hopeless after 22 hours when the cops told him he had the right to have counsel, that nothing to do, he just gave up? Your Honor, in that prior case, it was a drug case. This was a murder case. And not only is there a huge difference between being charged with a drug violation and being charged with murder, the circumstances here were unbelievable. I mean, he was taken into this little Utah jail, and at the Utah jail, they literally shut the place down. They shut down the phones for 22 hours, not just for him, but for everyone. Every single inmate in that place had no access to the phones during that entire time. And we know that the way people, the inmates communicated was by shouting at the jailers. If they needed a phone call, they would either, when someone came around, they would tell them, or if no one came around, they would shout. That's in the record. There can be no doubt, I think, that he knew that the phones were shut off, and it was because he was there. And, in fact, I think I'd like to move to the point, a second point that the California Court of Appeal made, which was that even if everything Mr. Reeve said was true, that, nevertheless, that was not sufficient to overcome his will. I strongly disagree. If you take Mr. Reeve's statements as true, first, he was told early on by Barnett, the jailer, that he would not have any access to telephones. Mr. Reeve said that he asked if... Let's return to your phrase, overcome his will, or overborn, his will was overborn, as Judge Gould questioned. That is a factual finding. Isn't it correct? His will was overcome. Now, tell me what evidence there is which indicates that a factual finding, that his will was not overcome, was an abuse of discretion. Your Honor, I think that it ignores the fact that this was an extreme situation in that Utah jail. Not only did they deny the phone access to Mr. Reeve, they denied it to everyone. It's clear that this was a big deal. There's a statement by your client that he had given up hope of getting an attorney. That's some of the evidence as to overcome his will. Yes. What other evidence is there other than the passage of 22 hours without telephone contact? Circumstantially, Your Honor, after the phones were finally turned on the next day, almost within an hour, Mr. Reeve was making lots of telephone calls to the person. Now, Mr. Reeve was broke, and that's clear from the record. But he was calling a family friend who not only had the assets to retain counsel with the will and who actually did retain counsel. Mr. Reeve actually had counsel the next day, September 12th, and an attorney flew out from California a couple of days later, which shows a strong indication on Mr. Reeve's part to obtain counsel. Now, I'm starting to run out of time here. All right. Are you going to save some time? I do want to save some time. Why don't you save your remaining time? Thank you. Good morning, Your Honors. Anthony DeSilvia, deputy attorney general, attorney for the appellee warden. Mr. Reeve did not meet his burden of showing coercive police conduct, which caused his will to be overborne in this case. The trial court properly found that. The court of appeal in California properly found that, and the district court properly found that. If we begin with his statement, Mr. Reeve claimed that he gave up hope to contact an attorney, yet at the evidentiary hearing, he never actually testified that he wanted to contact an attorney. He claims that when he contacted Deputy Barnett during the booking process, that he had an attorney. But who does he call? He doesn't call his attorney. He calls Mr. Ambort, the family friend. Isn't that the person who got him an attorney? That is the person who got him the attorney. Now, he had already spoken with Mr. Ambort at the gas station, and at that time Mr. Ambort said that he gave him Attorney Michael's phone number. But, again, Mr. Reeve doesn't ask if he had this phone number to call his attorney. He calls Mr. Ambort. The next day, he allegedly asks Sergeant Downard to use the phone, but he doesn't say, I want to call an attorney. In fact, if we look at Mr. Reeve's calls, who does he call at the end of the interview? He's Mirandized. He waves. In fact, he waves during the first part of the interview. At the end of the first hour, the detectives ask him, do you want to continue to speak with us? He says, yes, sure. It isn't until the end of an almost three-hour interview, or two and a half hours, that he says, I'd like to call my father. Well, actually, he tries to call his parents. And what do the detectives do? They said, sure, let's have you call your family members, and he speaks to his father. Then, after he speaks with his father at the end of the interview, who does he call? He doesn't try calling his attorney that day. He tries calling his family friend, Mr. Ambort, again. The following day, when he does have a Utah attorney for purposes of the extradition, who does he ask to call? Well, when the detectives come back, they actually put him on the phone with his Utah attorney. And at that point, the Utah attorney says, we're going to fight extradition. Don't talk to them. But then, Mr. Reeve, instead of calling his California attorney, he calls Mr. Ambort, the family friend, again. Then he tries to call his attorney. So he makes about three different attempts to call whom? Family friend and his parents, not his attorney. So for someone who's alleged will was overborn, they weren't demonstrating that they wanted to call an attorney. They wanted to call friends and family. But aren't those the people who are providing the funds to hire an attorney? Isn't it perfectly natural to try to find out if the wherewithal to hire an attorney is there before he calls an attorney? But Mr. Ambort, his testimony was that he told Mr. Reeve, I'll pay for your attorney. So if at the gas station he already knew that he would have had funding for an attorney, he doesn't go ahead and call an attorney. He calls his family friend again, Your Honor. Based on the totality of the circumstances, again, the trial court, after an exhaustive evidentiary hearing, the court of appeal and the district court, after independently reviewing the facts to determine whether the confession was voluntary, not coerced, came to the correct conclusion in this case, Your Honors. And unless this Court has any questions, I'm willing to submit on the briefing. I have no questions. Judge Gould. Thank you, Your Honor. Thank you. No questions. Mr. Wallingford. Thank you, Your Honor. Counsel talks about the fact that Mr. Reeve called a family friend rather than his attorney. I think it's important to keep in mind that the first interrogation happened on a Saturday, second interrogation happened on a Sunday. Those are difficult days to get a hold of counsel. And, in fact, on Sunday after the phones, I guess on Saturday after the phones came on, he did start trying to call the attorney in San Francisco. Maybe the first call was on Sunday. But he was not able to get through until Monday when the office opened. And I think it only makes sense that he would be talking to the person who, at least his go-between, between him and counsel at the times that counsel was not readily available on the telephone. Also, I would point out that in the Haynes case that I'm relying on, which I think is pretty similar to the situation here, one of the things the defendant wanted to do was call his wife. And that was one of the facts that the Supreme Court relied on. If the Court has no questions. Thank you very much. Thank you. All right. The matter of Reeve v. Campbell will be submitted. Thanks, counsel, for your argument. Thank you.
judges: Molloy, Gould, Bea